[File No. Cr. 97.]

STATE OF NORTH DAKOTA, Respondent, v. OLAF SMESTAD, Appellant.

(247 N. W. 556.)

Opinion filed March 18, 1933.

*E. G. Larson* and *Lashkowitz & Smith,* for appellant.

*James Morris,* Attorney General, and *Roy A. Ployhar,* State's Attorney, for respondent.

BIRDZELL, J.    The defendant was informed against for the stealing of personal property described as follows: "One black mulley steer coming three years old," the property of Rasmus Olsberg and of the value of $70.    He was convicted of petit larceny and appeals from the judgment.    In this court he raises the question of the sufficiency of the evidence and complains that he did not have a fair trial.    The contention that the evidence is insufficient resolves practically to the contention that the state did not sufficiently prove the corpus delicti.    We will refer briefly to the condition of the evidence bearing upon this question.

Rasmus Olsberg, the alleged owner of the property the defendant is charged with stealing, testified, in substance, that he had a farm in the vicinity of Kathryn, in Barnes county; that the defendant lived about a mile east and a little north of his place; that the Sheyenne River separated the defendant's farm from Olsberg's but that defendant also

had a hay field' west of the river and a pasture on the east side; that on August 3, 1931, he purchased two black steers from Mrs. Helgeson, one of them being the steer in question and the better of the two. He was worth $70. Mrs. Helgeson lived east of the defendant's place. Olsberg took the two steers and put them in his feed pen. The steer in question got out about an hour and a half later and he saw him after he got out. The steer went into the defendant's hay field and from there crawled through the barbed wire fence into the defendant's pasture. Olsberg did not do anything about it for a couple of days, thinking the steer would go back home (to Helgeson's) through the other fence. He inquired of Mrs. Helgeson's boy a couple of days later as to whether the steer had gone back home and was informed that it had not. It was threshing time and he was busy, so he did nothing about it for a few days. Then he made further inquiry and could not find him. He learned of a truck that had gone to the Smestad place on Sunday and taken a load back north on Monday. He learned who drove the truck and inquired of the driver and he said he had hauled cattle on Monday. He then went to Smestad's place and proposed buying some cattle, mentioning a black steer, and Smestad said he had only one black steer. He said he had not sold any cattle lately, not since he had traded for a tractor in the spring and said he had not seen the black stray steer. Olsberg went back to Smestad's place, taking two men with him, on Sunday about the 16th or 17th of August. On this occasion Smestad said he had hauled a load himself, and that he had had two black steers. On cross-examination Olsberg testified that the man who hauled the truck load from the Smestad place said he hauled a mulley black steer that weighed about 1100 pounds.

H. M. Hanson testified that he was with Olsberg when he went to the defendant's place on the second occasion in August, and when Olsberg confronted the defendant with his former statement that he had not hauled any cattle the defendant explained that there was a mortgage on the cattle and he didn't want to say anything about it. When Olsberg accused the defendant of shipping his black steer Smestad said, "No, I shipped my black steer."

Oscar Lee testified that the steer in question never went back to the Helgeson place and that on the Monday following the 3rd of August

he saw a truck go past the Helgeson place about six o'clock in the morning. He did not know what was in the truck.

T. Rustad, who was employed by the Agricultural Credit Company of Valley City, testified that he checked Smestad's cattle on June 24, 1931, for the purpose of a chattel mortgage and found only one black steer at that time.

Rudolph Miller, who hauled the cattle for Smestad on August 10th, testified that in the load there was one black steer without horns, weighing between 1000 and 1100 pounds.

Mrs. Andrew Mennis testified that on a Friday in August she was near the fence on the east side of Smestad's pasture and she saw a black steer that was away from the other cattle in the pasture, standing alone and bellowing. She lived just a little ways from there. She heard the same noise on Saturday, but not after that.

The evidence very clearly establishes the deprivation of the property of the complaining witness, and there is ample evidence to establish that a strange animal was seen in the pasture of the defendant at the time and to identify this animal as belonging to Olsberg and as being the one hauled away and sold by the defendant on the following Monday. True, the defendant contradicts this evidence, but we can not say that it is insufficient to convince the jury beyond a reasonable doubt that the identical animal owned by the plaintiff was in fact taken and sold by the defendant. Hence, the elements of the corpus delicti are established in this case. See 16 C. J. 771. For cases pro and con, dealing with the identity of animals alleged to have been stolen, see 36 C. J. 906, 907, § 486. As to the sufficiency of the evidence, generally, to establish corpus delicti in larceny, see note in L.R.A.1916B, 846. We are of the opinion that the evidence is sufficient in the instant case.

The contention that the defendant did not have a fair trial is based upon evidence which was introduced by the state to rebut character evidence offered by the defendant. The evidence complained of was not objected to at the trial. We have nevertheless read the testimony which, it is contended, resulted in undue prejudice to the defendant, and we can not see wherein it militated against a fair trial. In so far as specific instances were used to rebut evidence of good reputation, they were

used as stated above without objection by the defendant and went to the jury with the defendant's explanation of the circumstances.

Finding no error in the record, the judgment appealed from must be affirmed. It is so ordered.

NUESSLE, Ch. J., and BURKE, CHRISTIANSON and BURR, JJ., concur.